# UNITED STATES BANKRUPTCY COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| LORI L. FORTE, | In Chapter 13 proceedings |
| | Case No. 2-07-bk-00697-CGC |
| LORI L. FORTE, | |
| Plaintiff, | |
| vs. | Adv. No. 2-07-ap-00360-CGC |
| LAND TITLE AGENCY OF ARIZONA, INC., an Arizona corporation, et al., | |
| Defendants. | **ORDER RE: SECOND MOTION TO AMEND COMPLAINT, ORDER TO SHOW CAUSE AND LODGED ORDER OF DISMISSAL** |

**I.  Introduction**

At issue is the Second Motion to Amend Complaint filed by Debtor Lori Forte ("Forte"), an Order to Show Cause issued at the request of Victor Kirkland ("Victor") and a lodged order of dismissal by Forte.

**II.  Background**

Facing a sale of her residence arising out of divorce proceedings, Forte filed this Chapter 13 case on February 21, 2007.[1]  The previous day, February 20, 2007, she had filed a "special

---

[1]The petition was filed by attorney Dale Whiting ("Whiting").

1  action"[2] in Maricopa County superior court (LC 2007-000114-001 DT) seeking to clear title to the
2  house by removing a deed of trust recorded against the property by Charles Saint George Kirkland
3  ("Charles"), Victor Kirkland ("Victor") and/or Ivy Properties ("Ivy").[3] The special action sought
4  the removal of the lien as well as treble damages and attorneys fees under A.R.S. § 33-420(A) and
5  requested the issuance of an order to show cause.
6      In the complaint, Forte alleged that she had engaged Charles as a mortgage broker to obtain
7  refinancing on her home and that he had failed to perform. She acknowledges that Charles advanced
8  $11,000 to stave off foreclosure but claimed that no note had been executed to document that loan.
9  As a result, she alleged, the recording by Charles of a "naked" deed of trust purporting to secure the
10 non-existent note was wrongful and had impaired her ability to obtain refinancing from a third party
11 source.
12     On March 20, 2007, the superior court held a return hearing and established dates for briefs
13 of the parties and set a hearing for June 15. This hearing was subsequently vacated, apparently in
14 response to the withdrawal of Charles' counsel. By this time, Charles had filed a motion to dismiss;
15 Forte filed a response and Charles a reply. After argument, the court denied the motion on August
16 6, 2007. Apparently, Charles did not file an answer thereafter; the court therefore set a default
17 hearing for December 17, 2007. Forte obtained leave from the superior court to serve Victor by
18 publication.
19     Meanwhile, this adversary proceeding was filed on June 15, 2007 by Forte against Charles,
20 Victor and Ivy,[4] alleging virtually identical facts, and seeking a declaration that the deed of trust was
21 invalid either because of the lack of an underlying promissory note or as a fraudulent conveyance

---

[2] The special action was filed by attorney William Spence ("Spence"). Both Whiting and Spence office at the same address although Whiting claims they have no professional relationship other than physical proximity..

[3] The special action complaint lumps these three parties together as the "RPI", or real party in interest, defendants and does not specify which one allegedly did what.

[4] Further identification of other defendants is not necessary for purposes of this memorandum decision.

2

(under the theory that, in the absence of a note, no value had been given to support the purported lien).

While the complaint names Victor and Ivy as well as Charles, the only specific factual allegations involved Charles. Answers were filed *pro se* by Victor and Charles on July 18, 2007, denying liability. Thereafter, Forte sought and received leave to file an amended complaint. The amended complaint added a quiet title count against Victor and one new factual allegation–that Charles had "surreptitiously" inserted Victor's name as beneficiary on the deed of trust. The Court set a Rule 16(b) scheduling conference for September 12, 2007, the same day as a hearing was set in superior court.

The explanation given at the hearing by Whiting why this adversary proceeding was filed when there was already pending a special action in superior court is that Forte could not obtain service on Victor in Omaha and that the bankruptcy rules make nationwide service available to a plaintiff. Victor disputed any difficulty with service and put his home address in Omaha (where he avowed he had lived for over twenty years) on the record. The Court invited Mr. Whiting to serve Victor by first class mail at the address specified. After considerable discussion, including Mr. Whiting's avowal that he was content to have the matter resolved in this court, the Court declined the invitation of Mr. Whiting to continue the matter until after the superior court had completed service and instead set a schedule for initial disclosures, filing of an answer and motions for summary judgment. Whiting represented to the Court that the matter to be decided was the simple issue of whether there was a note; the Court noted to Whiting that the real issue was whether a note was necessary where the debtor acknowledged that consideration had been given. Whiting further noted that no relief was sought against Charles or, for that matter, Victor, other than removal of the lien and/or quiet title and attorneys' fees if appropriate.

At the Court's suggestion, Charles filed a motion to dismiss to which no response was filed. The Court granted the motion at the continued Rule 16(b) scheduling conference held on October 31, 2007. Also at that hearing, a disturbing pattern began to emerge. Whiting complained once again that he could not obtain service on Victor and demanded that Victor put his address on the

3

record, apparently either forgetting or choosing to ignore that Victor had already done so six weeks earlier. Further, lack of service is a hollow claim given that the record reflects that Victor filed an answer to the amended complaint on October 1, fewer than three weeks after leave to file the amended complaint had been granted, thereby mooting any issue of personal jurisdiction.

It also became clear that Whiting had not filed the motion for summary judgment that he had both agreed and been ordered to do on the "simple" issue of whether a note was necessary for the deed of trust to be valid. When pressed, he stated that the drafting had been assigned to Spence's paralegal[5] and that Spence had not authorized the paralegal to proceed because *Spence* now wanted to resolve the case in superior court by default where, apparently, service by publication had been effected. Whiting had no answer when asked by the Court what Spence's views had to do with his professional obligation to file a motion he had agreed and had been ordered to file. At this point, he opted instead to ask for ten more days to file the motion. The court allowed five days.

This court notes that the "default for failure to respond to service by publication" strategy apparently adopted by both counsel for Forte is particularly distasteful given that Victor, on the phone from Omaha, stated repeatedly that he had been in contact with Spence by phone and email numerous times[6] and in fact had answered the amended complaint in bankruptcy court.

In short, despite the clear direction from the Court at the September 12 hearing that the matter could and would be resolved on the merits in the bankruptcy court (the jurisdiction of which, it should be noted, had been invoked by Forte and her counsel Whiting), Whiting and Spence continued with their whipsaw tactics of seeking a non-merits determination in whichever court could be convinced to give it to them, despite the active participation of Victor in, at least, the bankruptcy

---

[5]This is an interesting admission given Whiting's earlier statements that he and Spence simply had the same address but worked separately.

[6]Whiting further suggested that he now suspected that Victor was not even aware of the case (without directly suggesting that the person on the phone who identified himself as Victor was in fact not) and that Charles was pulling all of the strings and keeping Victor in the dark because of his potential liability to Victor for failing to document the loan. No credible basis for these startling assertions was ever made by Whiting.

4

case. In an effort to stop this tawdry course of events, this court set an accelerated schedule on a motion for summary judgment and directed Whiting to advise Spence not to proceed further with default or any other remedy in the superior court pending resolution of the case in this court. In effect, the Court ordered Whiting to "shut down" the superior court case so that the case could be concluded in bankruptcy court. Whiting agreed to do so and volunteered to file a notice to that effect with the superior court and this court, accepting his offer, ordered him to do so. Further, under very direct inquiry by the court, Whiting agreed concretely that the only issue to be resolved in the summary judgment motion was whether the deed of trust was invalid for lack of a note, even though consideration had been paid.

What happened next is more disturbing still. Both parties filed summary judgment motions; while Victor's motion addressed the issue previously identified, Whiting, in a stunning aboutface, conceded the point[7] but instead argued that the entire transaction was a fraudulent scheme by the Kirklands to seize control of Forte's house from her.[8] Notwithstanding the fact that the "fraudulent scheme" theory had not been pled and was outside the bounds of the issue to be decided, Whiting asked the court to grant Forte summary judgment on this basis. Understandably, Victor objected vehemently. In a written decision (docket 41), the Court granted Victor's motion and denied Forte's. A day after this memorandum decision, Whiting filed a motion for summary disposition of Victor's claim and a motion to strike what Victor had filed. The Court entered an order denying both as moot, stating that the appropriate procedure would be to file a motion for leave to amend the complaint; the order provided that Whiting had twenty days to file such a motion or the adversary proceeding would be dismissed.

---

[7] The point being that there is no clear Arizona law requiring a note to support a deed of trust.

[8] Another issue raised repeatedly was that the recording of the deed of trust had made refinancing either impossible or more difficult. Although invited by the court to give an explanation, Whiting never adequately explained why the refinancing could not "take out" both the first mortgage and Kirkland lien, a lien that related to, after all, money advanced to cure a default on the first mortgage. If the cure had not been made, then the first mortgage may well have been foreclosed or, at least, the amount secured by the first would have included the amounts paid by Victor.

5

Whiting[9] decided that this was a convenient time to exit the bankruptcy court, where his one attempt to resolve the issue on the merits had failed,[10] and to return to superior court where winning by default beckoned. This was made crystal clear at a hearing on February 13, 2008 where Whiting acknowledged that he and Spence had purposely decided not to amend within the stated twenty day period so that dismissal of this proceeding would follow. Whiting stated that Spence now believed that there was fraud but needed more discovery on that point and that there was also a new, mysterious theory that would be dispositive but which he declined to reveal because it would give the Kirklands the opportunity to cure the allegedly fatal defect. Therefore, he asked either for dismissal without prejudice to proceeding in state court or leave of court to proceed with discovery in order to be able to file an amended complaint. In a pleading filed the day before the hearing,[11] Whiting explicitly revealed that it was Forte's intent to proceed with what he called "non-core" issues in the superior court after this case was dismissed. Notwithstanding the Court's clear direction in earlier hearings, and, not insignificantly, Whiting's agreement with those directions, Whiting also took the position (in the February 12 pleading and at the February 13 hearing) that he believed this court's December 14th order meant that, following dismissal, the matter could proceed

---

[9] The record, including Whiting's statements on the record, suggest that this was at least partially Spence's decision.

[10] The Court notes that, despite the highly confident tone taken by Whiting throughout the proceeding that a promissory note was necessary to support a deed of trust, apparently no research or analysis had actually been done on that issue prior to asserting the claim. When given the opportunity to produce the authority, Whiting folded his tent and admitted that he was wrong. Under the heading "Plaintiff's New View of the Case," Whiting stated the following: "Where Plaintiff originally believed that case law could establish that absent a written note, the deed of trust would not be valid, Plaintiff now understands that where consideration had been given either before or contemporaneously to the signing of the deed of trust, the deed might be honored." At a later hearing, he admitted that he had taken the position because he had been "led to believe" by Spence that it was, to use a current term, a slam dunk. Of course, counsel has an independent obligation under ER 3.1 and Fed. R. Bank. Proc. 9011 to determine that positions taken by *him* in pleadings *he* files have a good faith basis in law and fact.

[11] Response to Application for Order to Show Case, Notice of Probable Existence of Non-Core Issues, and Request to Dismiss Pursuant to 28 U.S.C. § 157, and Response to Trustee Confirmation Issues Still Pending, docket 53.

6

in superior court.

The Court finds this construction of its order, in light of all that has happened in this case, to be totally disingenuous. The meaning of the December 14 order was clear: either seek leave to amend within the time period stated or the case would be dismissed and the matter resolved. In other words, the Court told Whiting: "You have lost on the theories you initially presented. If you believe there are other theories, seek leave to amend the complaint to state them within the time period set and we'll see where that goes. Otherwise, your case against these parties is over." It is a total misconstrual of the order to suggest that the thrust of the order was to allow the case here to be dismissed so that the case in superior court could continue and indeed be broadened far beyond its original parameters.

Whiting stated repeatedly at the February 13th hearing that he would need discovery in order to file a second amended complaint, in effect admitting that he did not yet have a Rule 9011 basis for alleging his new fraudulent scheme theories. Yet, notwithstanding these repeated assertions, he filed his second motion to amend (docket 55), together with a proposed second amended complaint alleging just such causes of action, five days later on February 18, 2008, without the benefit of any additional factual development.

At the end of the February 13th hearing, the Court explicitly stated and ordered that all of the parties over which this court has jurisdiction, including Forte, Victor and Charles, were precluded from taking any further action in the superior court pending further order of this court. This order included any actions of a substantive nature against Charles, including, without limitation, proceeding with a default hearing.

**III     Analysis and Discussion**

In this case, Forte, through her counsel Whiting, affirmatively invoked the jurisdiction of the bankruptcy court to resolve the lien dispute at issue. In the early stages of the case, this court directly confronted the issue of how best to address and resolve the question given the pendency of

7

Case 2:07-ap-00360-CGC   Doc 63   Filed 03/14/08   Entered 03/21/08 14:46:48   Desc
Main Document    Page 7 of 11

parallel proceedings in two courts. After full discussion with counsel and the other parties, the Court decided, with the concurrence of Whiting, that the issue would be resolved in bankruptcy court. After ascertaining that no factual disputes on the purportedly dispositive issue existed, the Court set a brisk schedule for submitting and briefing summary judgment motions. As noted above, for thoroughly inadequate reasons, Whiting did not comply with the established schedule. Nevertheless, the Court granted Whiting a second bite at the apple. When the motion was actually filed, it became apparent that Whiting had no good faith legal basis for proceeding on the "lack of a note" theory and he attempted to change course. Once again, the Court gave Whiting the opportunity to do so consistently with the rules. Once again, he failed to comply with the order, apparently believing that the resulting dismissal would give him a free pass back to state court.

Whiting argues that proceeding in state court is necessary because some of his claims may be non-core and that his client may have a right to jury trial. This is a red herring. Whiting does not argue that federal jurisdiction is lacking; indeed, as the plaintiff is the debtor and the lien affects property of the estate, the claims are all comfortably within the scope of 28 U.S.C. § 1334. If, as Whiting suggests, some claims may be non-core, they are at the least within the "related to" jurisdiction of Section 1334. And, of course, jurisdiction primarily lies with the district court, subject to the referral to bankruptcy court under 28 U.S.C. § 157(a). The Ninth Circuit has recently held in *Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)*, 504 F.3d 775 (9th Cir. 2007) that a Seventh Amendment jury trial right does not require the immediate transfer of the case to the district court but rather the bankruptcy court can retain the case for all pre-trial matters. Thus, under the December 14th order, Whiting clearly had the alternative to plead all causes of actions he thought appropriate, whether core or non-core, reserving the right to seek withdrawal of the reference at an appropriate time for a trial by jury.[12]

Therefore, the Court will enforce its prior order and deny the motion to amend and will dismiss this adversary proceeding. The remaining question is whether that dismissal will be with

---

[12]The bankruptcy court may conduct a jury trial if specially designated by the district court and with the explicit consent of the parties. 28 U.S.C. § 157(d).

8

or without prejudice.

Based on the procedural history detailed above, the Court finds that Whiting has abused the litigation process and knowingly acted in a manner inconsistent with Court orders. It is fundamentally unfair to attempt to manipulate two simultaneous court proceedings in a manner designed to avoid a decision on the merits while at the same time attempting to obtain a favorable result on the underlying issues on a non-merits basis. It is further fundamentally unfair to consent to the disposition of a matter in one tribunal while at the same time attempting to obtain substantive relief in another tribunal. Finally, it is unprofessional and inconsistent with a lawyer's ethical responsibilities repeatedly to refuse to abide by court orders.

11 U.S.C. § 105(a) provides, in effect, that the Court, *sua sponte*, may take any action or make any determination necessary or appropriate to "enforce or implement court orders or rules, or to prevent an abuse of process." Under Section 105(a), a bankruptcy court has "the inherent power to sanction vexatious conduct presented before the court." *In re Rainbow Magazine Inc.*, 77. F.3d 278, 284 (9th Cir. 1996) (applying the holding of *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) in the context of 105(a)). This situation requires the Court to take such action. It would be a mockery of the orders issued in this case were Forte able to leave bankruptcy court unscathed and return to superior court to litigate these new theories. The opportunity existed here to litigate these issues, the process for taking advantage of it was clearly outlined, yet it was flatly eschewed by Whiting. The result must be that the complaint is dismissed with prejudice. It is the Court's intention with this order, lest there be any doubt, that the dismissal of this complaint with prejudice is intended to be a full and final adjudication of all claims that were or could have been brought by Forte against these three defendants, to the full extent allowed under the doctrine of *res judicata* or claim preclusion.

The Order to Show Cause is vacated as moot.

The Court will prepare and enter a separate judgment.

So ordered.

9

Case 2:07-ap-00360-CGC   Doc 63   Filed 03/14/08   Entered 03/21/08 14:46:48   Desc
Main Document    Page 9 of 11

**DATED**: March 14, 2008

_____
CHARLES G. CASE II
UNITED STATES BANKRUPTCY JUDGE

**COPY** of the foregoing mailed by the BNC and/or sent by auto-generated mail to:

**DALE E. WHITING**
WINTER & WHITING, P.C.
500 W RAY RD #1
CHANDLER, AZ 85225

**VICTOR KIRKLAND,** *DEFENDANT*
2245 S. 84TH STREET
OMAHA, NE 68124

**CHARLES ST. GEORGE KIRKLAND**
525 WEST SELDON LANE
PHOENIX, AZ 85021

**WILLIAM M. SPENCE**
BILL SPENCE, LTD
500 WEST RAY ROAD, SUITE 1
CHANDLER, AZ 85225

**HON. MICHAEL JONES**
MARICOPA COUNTY SUPERIOR COURT
201 WEST JEFFERSON STREET
PHOENIX, ARIZONA 85003

**EDWARD J. MANEY, TRUSTEE**
PO BOX 10434
PHOENIX, AZ 85064-0434

**STATE BAR OF ARIZONA**
ATTORNEY DISCIPLINE
4201 NORTH 24TH STREET, SUITE 200
PHOENIX, AZ 85016

10

| | |
|---|---|
| 1 | **OFFICE OF THE UNITED STATES TRUSTEE**<br>230 NORTH 1ST AVENUE, SUITE 204 |
| 2 | PHOENIX, AZ 85003 |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

11